**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

<table>
<tr><td>CHAMBERS OF<br>STEPHANIE A. GALLAGHER<br>UNITED STATES MAGISTRATE JUDGE</td><td>101 WEST LOMBARD STREET<br>BALTIMORE, MARYLAND 21201<br>(410) 962-7780<br>Fax (410) 962-1812</td></tr>
</table>

December 23, 2014

LETTER TO COUNSEL

      Re:    *United States of America f/u/o Birckhead Electric, Inc. v. James W. Ancel, Inc.*
             Civil No. WDQ-13-2498

Dear Counsel,

      Pursuant to Judge Quarles's order referring the case to me for discovery [ECF No. 38], I have reviewed Plaintiff's Motion to Compel Defendant James W. Ancel, Inc.'s ("JWA") Discovery Responses and for Sanctions, and the ensuing oppositions, replies, and supplemental filings. [ECF Nos. 37, 39, 41, 43, 44, 47]. For the reasons described below, Plaintiff's motion will be GRANTED in part and DENIED in part.

      The parties disagree about several topics: (1) whether Plaintiff requested in excess of twenty-five interrogatories or whether the interrogatories contained valid subparts; (2) whether JWA should be compelled to respond to Document Requests Nos. 11-12, and 22-23; and (3) whether JWA should be compelled to produce additional records relating to a Global Settlement between JWA and the Project Owner, and relating to Payment Applications during the relevant period. Each topic is addressed below.[1]

## A. Disputed Interrogatories

      Generally, JWA contends that Plaintiff's alleged "subparts" constitute independent interrogatories. Accordingly, JWA responded only to Interrogatories 1-11 and refused to respond further, taking the position that it had, at that point, answered twenty-five separate interrogatories. While Plaintiff contends that, by serving partial answers to some interrogatories, JWA waived its right to contest numerosity, I disagree. JWA did not pick and choose the twenty-five interrogatories it wished to answer, but instead answered what it believed to be the first twenty-five interrogatories before stopping. JWA's approach was reasonable and furthered the efficient production of discovery more than an outright objection. *See* Paul W. Grimm, Charles S. Fax, & Paul Mark Sandler, *Discovery Problems and their Solutions* 20 (ABA 2009) ("[W]hile a defendant who objects to interrogatories on the ground of numerosity may be justified in not answering any of them, . . . he could also answer the first 25 and then stop.")

---

[1] Both parties also contest the timeliness of the other party's discovery responses. If there was delay on the part of either party, it was insignificant. Accordingly, I need not make specific findings about whether either party submitted late responses in the resolution of this motion. Both parties are reminded to adhere strictly to discovery deadlines in the future, or to request reasonable extensions of time.

*United States f/u/o Birckhead Electric, Inc. v. James W. Ancel, Inc.*
Civil No. WDQ-13-2498
December 23, 2014
Page 2

(internal citation omitted); *see also Serigne v. Preveau*, 2013 WL 1789520, at *2 n.3 (E.D. La. Apr. 26, 2013) ("The best rule . . . is that a responding party must answer the first 25 interrogatories.") (quoting *Paananen v. Cellco Partnership*, 2009 WL 3327227, at *5 (W.D. Wash. Oct. 8, 2009)).

Thus, the relevant question is which party accurately counted the number of interrogatories propounded by Plaintiff. Overall, "'an interrogatory containing subparts directed at eliciting details concerning the common theme should be considered a single question,' but 'an interrogatory with subparts inquiring into discrete areas is more likely to be counted as more than one for purposes of limitation.'" *Mezu v. Morgan State University*, 269 F.R.D. 565, 572–73 (D. Md. 2010) (quoting 8A Charles A. Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, *Federal Practice & Procedure* § 2168.1 at 261 (2d ed. 1994)). I have applied that standard below in assessing the contested interrogatories.

INTERROGATORY NO. 7: Provide a detailed description of the contract with the "replacement contractor" engaged by JWA to "complete the work for the Project" as referenced in paragraph 11 of the Counterclaim, and include in your answer the following information:

  a. The name of the replacement contractor;
  b. The date the contract was executed;
  c. The value of the contract;
  d. The scope of work under the contract;
  e. All amounts invoiced by the replacement contractor;
  f. All amounts paid to the replacement contractor; and
  g. All previous bids for completion of the work subsequent to Birckhead's cessation of work on the Project and prior to engagement of the replacement contractor.

JWA contends that this interrogatory actually contains four interrogatories, because the last three subparts do not constitute a description of the contract. Def. Opp. 4. I agree that the last subpart, relating to previous bids for completion of the work, does not fall within a "detailed description of the contract," but I find that subparts "e" and "f" fall within the overall scope of the question posed. Accordingly, Interrogatory No. 7 should be counted as two interrogatories.

INTERROGATORY NO. 8: Provide a detailed description of any and all "errors" or defects in the labor or materials provided by Birckhead to the Project, as referenced in paragraph 11 of the Counterclaim, including but not limited to a description or identification of:

  a. The nature of the error or defect;
  b. The code, regulation, rule, manufacturer's instruction, or other authority violated by Birckhead with regard to each error or defect;
  c. All estimates provided by any person for the remediation of any such error or defect; and
  d. All procedures undertaken by JWA or any other person to identify, analyze, examine, inspect, test, quantify, or mitigate each such error or defect.

*United States f/u/o Birckhead Electric, Inc. v. James W. Ancel, Inc.*
Civil No. WDQ-13-2498
December 23, 2014
Page 3

JWA counts this interrogatory as having three separate interrogatories, because, in its view, subparts (c) and (d) constitute separate topics. Def. Opp. 4-5. In my view, Interrogatory No. 8 consists of two separate topics: (1) the errors or defects provided by Birckhead and (2) JWA's remedial efforts. Subpart (d) contains a combination of both of the topics. However, Interrogatory No. 8 should count as two interrogatories.

INTERROGATORY NO. 10: Provide a detailed accounting of the Subcontract, including but not limited to a line item listing of the following:

    a. All payments made by JWA to Birckhead;
    b. A description of the labor or materials for which each payment was made;
    c. All credits and backcharges, along with their corresponding value;
    d. The date all pay applications, payments, credits, or backcharges were submitted, made, or assessed;
    e. Any outstanding amounts due to Birckhead for labor or materials provided; and
    f. An identification of all persons with knowledge of items (a)-(e) above.

JWA counts Interrogatory No. 10 as three interrogatories, because it submits that subparts (d) and (f) fall outside an accounting. Def. Opp. 5. I disagree. Subpart (d), asking for dates for items within the accounting, is fairly construed as part of a full accounting. Moreover, as to subpart (f), I concur with the reasoning of other courts that have held that identification of persons with knowledge constitutes a subpart of a single interrogatory. *See, e.g., The Mitchell Co., Inc. v. Campus,* 2008 WL 2468564, at *8 (S.D. Ala. June 16, 2008) ("Further, the request for identification of knowledgeable persons is equivalent to the Advisory Committee's example of an inclusive subpart that requests the identification of persons present for certain communications."); *Theobles v. Indus. Maint. Co.,* 247 F.R.D. 483, 485 (D. Virgin Is. 2006) (finding that a request to identify persons with knowledge is properly a subpart of a single interrogatory). Thus, Interrogatory No. 10 is properly viewed as a single interrogatory.

INTERROGATORY NO. 11: Provide a detailed description of any and all breaches of the Subcontract by Birckhead, including in your answer the following information:

    a. The nature of the breach;
    b. The provision of the Subcontract to which the breach relates;
    c. The date of each such breach;
    d. An identification of all persons with knowledge of each breach;
    e. A quantification of the value of the damage associated with each breach; and
    f. All efforts undertaken by JWA to mitigate any damage associated with each breach.

In JWA's opinion, this interrogatory consists of four interrogatories, because subparts (d), (e), and (f) ask for information related to, but not part of, the original question regarding Birckhead's alleged breaches. Def. Opp. 5. For the reasons set forth above, I believe that subparts (d) and (e) are appropriately construed as part of the original request for a detailed description of the breaches. However, subpart (f), asking about JWA's mitigation efforts, cannot

*United States f/u/o Birckhead Electric, Inc. v. James W. Ancel, Inc.*
Civil No. WDQ-13-2498
December 23, 2014
Page 4

be viewed as part of a detailed description of Birckhead's alleged breaches. Accordingly, Interrogatory No. 11 should be counted as two interrogatories.

In total, then, through Interrogatory No. 11, Plaintiff asked fourteen separate interrogatories. Plaintiff is entitled to responses to eleven additional interrogatories, which should be submitted to JWA (or identified by number from the interrogatories previously served) within ten (10) days of the date of this Order. JWA will then have twenty (20) days to respond to the eleven additional interrogatories.

**B.  Document Requests 11-12 and 22-23[2]**

The following requests are in dispute:

REQUEST NO. 11:  Any and all documents constituting, evidencing, or relating in any manner to any dispute between JWA and the Project owner with regard to the Project, including but not limited to delay notices, inspections reports, and written correspondence.

REQUEST NO. 12:  Any and all documents constituting, evidencing, or relating in any manner to any dispute between JWA and any subcontractor other than Birckhead relating to the Project, including any delay in the Project caused by such subcontractor, including but not limited to notices, inspection reports, and written correspondence.

REQUEST NO. 22:  Any and all documents constituting, evidencing, or relating in any manner to internal communications, including electronic mails, between you and any of your agents, employees, officer, directors, or independent contractors with regard to the Project, including but not limited to communications regarding the scope of work set forth in the Subcontract, the completion or remediation of Birckhead's work, or any delays in the Project caused by any person.

REQUEST NO. 23: Any and all documents evidencing or containing communications, including electronic mails, between you and any third party constituting, evidencing, or relating to the Project, including but not limited to communications regarding the scope of work set forth in the Subcontract, the completion or remediation of Birckhead's work, or any delays in the Project caused by any Person.

JWA objected to each of those requests as overbroad and largely irrelevant. Def. Opp. 6-9. Plaintiff contends that the parties' dispute arises out of delays in the Project's work, and that Plaintiff therefore needs to obtain communications pertaining to any such delays. Pl. Mot. 5-7.

---

[2] Plaintiff's original motion also contained a request to compel JWA to produce ESI, specifically emails responsive to its requests for production. Pl. Mot. 7-8. Plaintiff submitted that JWA was refusing to provide emails until an ESI plan was agreed to by the parties. *Id.* JWA responded that it had in fact produced all responsive emails, in PDF form, as part of its hard-copy document production. Def. Opp. 9-10. Plaintiff did not dispute that characterization in its reply. Accordingly, on the current record, I do not find further production of ESI to be required.

*United States f/u/o Birckhead Electric, Inc. v. James W. Ancel, Inc.*
Civil No. WDQ-13-2498
December 23, 2014
Page 5

The difficulty arises because, while Plaintiff is able to articulate a reasonable basis to seek documents pertaining to delays, Plaintiff's document requests go far beyond such documentation. The repeated use of "any and all," "relating to the Project," and "including but not limited to" render Plaintiff's requests grossly overbroad, and JWA's objections were therefore justified. However, Plaintiff is entitled to responses to these requests, as appropriately narrowed. JWA should produce any and all communications between it and Birckhead and between it and the Project Owner relating to delays in the Project caused by any person. JWA should further produce any communications with the "replacement contractor" regarding the completion or remediation of Birckhead's work, or regarding any delays in the Project caused by any person. Finally, JWA should produce any documents relating to any delay claim against any person or entity other than Birckhead relating to the Project. As narrowed, the requests seek information relevant to Birckhead's claims. JWA has thirty (30) days from the date of this Order to produce documents responsive to these narrowed requests.

### C.  Documents Relating to "Global Settlement" and "Payment Applications"

In JWA's discovery production, Plaintiff learned that there had been a $3.0 million settlement between JWA and the Project Owner to resolve disputes over various categories of work ("the Global Settlement"). Several categories of the settlement related to electrical work, which was the area subcontracted to Plaintiff and others. The Global Settlement agreement has now been produced to Plaintiff subject to a protective order. However, the documents Plaintiff received do not indicate whether any of JWA's underlying claims against the Project Owner pertained to work performed by Birckhead.[3]  Plaintiff also contends that it has received incomplete Payment Certifications and Payment Applications for the relevant period, leaving it unable to ascertain whether the Government was invoiced for work performed by Birckhead or other replacement contractors.

JWA contends that any electrical work relating to the Global Settlement and the Utilities Settlement pertain to other contractors and not to Birckhead, and substantiates its contention with the results of a Government investigation concluding that JWA had paid Birckhead for all of the work invoiced to the Government. Def. Supp. 2-3. However, it is reasonable for Birckhead to request limited information in discovery to test the veracity of JWA's contention. Accordingly, JWA should produce, within thirty (30) days of the date of this Order, backup documentation relating to any Payment Certifications and Payment Applications for electrical work on the Project, and any portion of the Global Settlement relating to electrical work, whether that electrical work was performed by Birckhead or any other contractor.

---

[3] When this issue was first raised in Plaintiff's reply to its original Motion to Compel, Plaintiff also sought documents pertaining to a "Utilities Settlement." JWA represented to the Court that the "Utilities Settlement" was part of the "Global Settlement," and thus production of the records relating to the "Global Settlement" addressed both issues. [ECF No. 44 at 2]. Plaintiff did not contest that characterization, or further address the "Utilities Settlement," in its supplemental reply. Accordingly, I make no independent findings regarding the "Utilities Settlement."

*United States f/u/o Birckhead Electric, Inc. v. James W. Ancel, Inc.*
Civil No. WDQ-13-2498
December 23, 2014
Page 6

      **D.  Attorney's Fees**

      While Plaintiff appropriately does not seek sanctions, Plaintiff does seek fees and costs in the amount of $1500.00.  Pl. Reply 8.  Fed. R. Civ. Proc. 37(a)(5)(C) provides that, where a motion for an order compelling discovery is granted in part and denied in part, a court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion."  In this case, I do not find an award of expenses to be appropriate.  JWA did not simply refuse to produce discovery but, as set forth above, raised legally justifiable and often prevailing objections to Plaintiff's discovery requests.  Any attempt to apportion fees between the issues on which Plaintiff prevailed and the issues on which JWA prevailed would likely result in a virtually even split.  Thus, no expenses will be awarded.

      Despite the informal nature of this letter, it is an Order of the Court and will be docketed as such.

                    Sincerely yours,

                      /s/

                    Stephanie A. Gallagher
                    United States Magistrate Judge

cc: Judge William D. Quarles, Jr.